**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

<table>
<tr><td><b>CHAMBERS OF</b><br><b>CHELSEA J. CRAWFORD</b><br><b>UNITED STATES MAGISTRATE JUDGE</b></td><td><b>101 WEST LOMBARD STREET</b><br><b>BALTIMORE, MARYLAND 21201</b><br><b><u>MDD_CJCChambers@mdd.uscourts.gov</u></b><br><b>(410) 962-4560</b></td></tr>
</table>

June 11, 2026

**REPORT AND RECOMMENDATION RE:**        *Md. Electr. Indus. Health Fund,* et al. *v. Max Electr. Constr. Corp.*, Civil Action No. JRR-25-0576

Dear Counsel:

This matter was referred to the undersigned by the Honorable Julie R. Rubin in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 to review a motion for default judgment and/or make recommendations concerning damages. ECF No. 20. I have requested and received additional supporting materials from the moving party. ECF Nos. 22 to 22-17, 24 to 24-2. No hearing is necessary. Loc. R. 105.6. For the reasons set forth below, I recommend that Plaintiffs' motion be granted and that damages be awarded as set forth herein.

I.      **Background**

This action is brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e), and Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), for unpaid contributions. ECF No. 1. Plaintiffs are Maryland Electrical Industry Health Fund, Maryland Electrical Industry Pension Fund, Maryland Electrical Industry Severance and Annuity Fund, Maryland Electrical Industry Joint Apprenticeship and Training Committee, National Labor Management Cooperation Committee, Maryland Electrical Industry Labor Management Cooperation Committee, and Local Union No. 24, International Brotherhood of Electrical Workers, AFL-CIO ("Plaintiffs"). Defendant Max Electrical Construction Corp. is a signatory to a collective bargaining agreement with Local 24. ECF No. 1 ¶ 11. The Complaint alleges that Defendant failed to make required contributions and remittances due to Plaintiffs under the collective bargaining agreement for the months of August 2023, December 2023, February 2024, May 2024, June 2024, and July 2024. ECF No. 1.

Plaintiffs served process on Defendant, *see* ECF No. 11, who did not answer or otherwise respond to the Complaint. On July 15, 2025, Plaintiffs moved for Clerk's Entry of Default against Defendant. ECF No. 12. Default was entered on August 26, 2025, which was not challenged by Defendant. ECF No. 16. Plaintiffs now move for an entry of default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(b)(2) for its failure to appear or otherwise defend in this matter. ECF No. 19. The motion is unopposed.

## II.    Default Judgment

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. Unless a party's claim is for a "sum certain" or "a sum that can be made certain by computation," "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)–(2). While the Fourth Circuit has a "strong policy that cases be decided on their merits, … default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421–22 (D. Md. 2005) (citation modified). "In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001)). If liability is established, then the "court must make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Id.* "[T]he Court may award damages without a hearing if the record supports the damages requested." *Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil Action No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011).

### A.    Liability

Plaintiffs assert violations of both ERISA (Counts 1–6) and LMRA (Count 7). This Court has jurisdiction over the ERISA claims under 29 U.S.C. § 1132(e) and over the LMRA claim under 29 U.S.C. § 185(a). "As the recovery would be the same under both statutes, the Court will analyze these claims under ERISA." *Trs. of Elec. Welfare Tr. Fund v. Tech. Serv. Grp., LLC*, Civil Action No. GJH-14-3018, 2016 WL 5462800, at *3 (D. Md. Sep. 27, 2016). Plaintiffs comprise of employee benefit plans under 29 U.S.C § 1002(3), multiemployer plans under 29 U.S.C. § 1002(37), management-labor associations under 29 U.S.C. § 186(c)(9), and an unincorporated labor organization under 29 U.S.C. §§ 152(5), 185(a), also known as an employee organization under 29 U.S.C. § 1002(4). *See* ECF No. 1 ¶¶ 3–9. Except for Local Union No. 24, all Plaintiffs are represented by a Trustee or authorized agent. *Id.*; *see* 29 U.S.C. § 1002(21)(A). Defendant is an employer as defined by ERISA and the LMRA. ECF No. 1 ¶ 10 (citing 29 U.S.C. § 1002(5) and 29 U.S.C. § 152(2)).

ERISA Section 515 provides that every employer "who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA, therefore, "provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685–86 (D. Md. 2013) (quoting *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). Similarly, under the LMRA, Plaintiffs may file suit for violations of labor contracts. 29 U.S.C. § 185(a); *Int'l Painters & Allied Trades Indus. Pension Fund v. DLC Corp.*, Civil Action No. WDQ-11-1938, 2012 WL 1229491, at *4 (D. Md. Apr. 11, 2012) (Gesner, J.) (stating that the LMRA "authorizes plaintiffs, as an employee benefit trust fund and trustee, to bring such an action to enforce the terms of the CBA and to seek remedies for its breach.").

2

To establish liability, Plaintiffs must show that Defendant was "obligated to make contributions … under the terms of a collective bargaining agreement and that [it] failed to make such contributions." *Trs. of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Ornell Fire Sprinkler, Inc.*, Civil Action No. AAQ-23-2080, 2024 WL 640030, at *3 (D. Md. Feb. 15, 2024). To support their factual allegations, Plaintiffs provide the affidavit of Jessica Morrison, who oversees "the operation and administration of the Funds and related entities, including collection of contributions and remittances owed to the Plaintiffs pursuant to the terms of the Collective Bargaining Agreement as well as the Agreements and Declarations of Trust establishing and governing the Funds and related entities." ECF No. 19-2 ¶ 1. Ms. Morrison attested that Defendant is a signatory to a collective bargaining agreement with Local 24, under which it was obligated to make certain contributions and remittances to Plaintiffs each month. ECF No. 19-2 ¶ 4–6. Ms. Morrison further attested that Defendant failed to pay the contributions and remittances due for the months of December 2023, February 2024, May 2024, June 2024, and July 2024.[1] ECF No. 19-2 ¶ 7. Accepting Plaintiffs' allegations as true, they have sufficiently established the above elements.

### B.    Damages

An employer that fails to make the required contributions is liable for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and legal costs, and any other relief the Court deems appropriate. *Trs. of the Elec. Welfare Tr. Fund v. Max Elec. Constr. Corp.*, Civil Action No. TDC-25-3715, 2026 WL 1153037, at *4 (D. Md. Apr. 29, 2026) (Quereshi, J.) (citing 29 U.S.C. § 1132(a), (g)). "[I]nterest on unpaid contributions shall be determined using the rate provided under the plan." 29 U.S.C. § 1132(g). As to Count 7 under the LMRA, "[a]s the recovery would be the same under both statutes, the Court will analyze th[is] claim[] under ERISA." *Tech. Serv. Grp., LLC*, 2016 WL 5462800, at *3. Here, Plaintiffs seek unpaid contributions, liquidated damages, and interest. ECF No. 19-1.

According to the most recent corrected filing, Plaintiffs seek $36,405.02 in unpaid contributions for the months of December 2023, February 2024, May 2024, June 2024, and July 2024. ECF No. 24-2 at 2. Furthermore, Plaintiffs seek $5,710.63 in liquidated damages and $8,020.53 in interest. *Id.* The unpaid contributions, liquidated damages, and interest were calculated per entity, per month, totaling $42,115.65. *Id.* Pursuant to the Court's orders, and in support of their request, Plaintiffs provided Defendant's remittance reports, a chart breaking down the unpaid contributions, liquidated damages, and interest per entity, per month, and the operative collective bargaining agreement and trust agreements. ECF Nos. 22-1 to 22-17, 24-2. Following these supplemental submissions, the Court finds that the damages were properly calculated and recommends that damages be entered in the amount of $42,115.65, exclusive of attorneys' fees and costs.

### C.    Attorneys' Fees and Costs

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved

---

[1] Following the filing of the Complaint, Plaintiffs learned that Defendant had paid contributions for August 2023 and Plaintiffs no longer seek damages for that month. ECF No. 19-1 at 2.

some degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citation modified). To determine the amount of reasonable attorneys' fees, the Court must determine the "lodestar amount," which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). The movant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). To assist in the determination of reasonableness, the Court considers the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d 714, 717–19 (5th Cir. 1974) (cleaned up); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (endorsing *Johnson* factors). The lodestar amount is presumed reasonable. *McAfee v. Boczar*, 738 F.3d 81, 88–89 (4th Cir. 2013), *as amended* (Jan. 23, 2014). After consideration of the lodestar amount, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* at 88 (citation modified).

Also relevant here are this Court's Local Rules, which include guidelines for billing formats and time recordation, compensable and non-compensable time, hourly rates, and reimbursable expenses. Loc. R. App'x B §§ 1–4. As to hourly rates, the guidelines provide that

> [r]easonable hourly rates should be determined by the Court using declarations, affidavits, stipulations by the parties, or other evidence. A useful guideline for hourly rates may be provided by the Fitzpatrick Matrix[ ] as adjusted annually, with a reduction of 5% to 20% (to reflect differences between the legal markets in Washington, D.C. and Maryland).

Loc. R. App'x B § 3. "When considering a published fee matrix, like the Fitzpatrick Matrix … the Court cannot 'elevate a matrix above all other types of evidence or treat a matrix as establishing a presumptive answer or range of answers.'" *Tesfay v. Travel Centers of Am.*, Civil Action No. CJC-25-1242, 2026 WL 171710, at *2 (D. Md. Jan. 22, 2026) (quoting *De Paredes v. Zen Nails Studio LLC*, 134 F.4th 750, 754 (4th Cir. 2025)). Rather, the court must "must consider all relevant evidence to determine the prevailing market rates in the relevant community … including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its own personal knowledge." *De Paredes*, 134 F.4th at 754 (citation modified).

4

Here, Plaintiffs have provided the affidavit of Corey Smith Bott, Esq., attorney at the firm Abato, Rubenstein and Abato, P.A., and one of two attorneys in this case. The affidavit describes the billing records generated. ECF No. 19-3. Ms. Bott was admitted to the Maryland bar in December of 1998 and billed 45 hours at $350 an hour. ECF No. 19-3 at 1, 6. The second attorney, Manuel Alcantar-Robles, was admitted to the District of Columbia bar in December of 2024, and billed 33.75 hours at $350 an hour. ECF No. 19-3 at 1, 7. For several reasons, the requested fees should be reduced.

First, an hourly rate of $350 is appropriate for Ms. Bott, given her years of experience, but it is too high for Mr. Alcantar-Robles, who has been admitted to the District of Columbia bar for less than one year at the time of the billing. ECF No. 19-3 at 1. Considering all the relevant evidence, a rate of $275 is recommended as more appropriate for Mr. Alcantar-Robles.

Second, the billing records reflect block billing, duplicative billing, and excessive billing. Block billing, which groups several tasks under a single entry, "is problematic because it does not provide the district court with a clear sense of how many hours were performed on a particular task." *Int'l Painters & Allied Trades Indus. Pension Fund v. Shoemaker LLC*, Civil Action No. ELH-24-3575, 2026 WL 1238546, at *13 (D. Md. May 6, 2026) (citation modified). Almost all the records submitted contain block billing. On March 26, 2025, for example, Ms. Bott billed 1.5 hours for case file review, two conferences, and three email exchanges. ECF No. 19-3 at 4. And some of the block bills are also duplicative. For instance, on March 4, 2025, Ms. Bott and Mr. Alcantar-Robles both block-billed 1.5 hours for holding an office conference regarding service of the complaint, and researching and drafting an office memorandum concerning the same. ECF No. 19-3 at 4, 6.

Finally, given the time and labor expended, the novelty and complexity of the issues, and the awards in similar cases, a total of 78.75 hours spent in a span of eight months for a case that is resolved on default judgment is unreasonable. Similar default judgment cases in this district involving unpaid contributions under ERISA have approved between 7.75 and 37.75 total hours billed. *Trs. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Reliant Fire Prot., LLC*, Civil Action No. PX-25-0926, 2026 WL 1345564, at *5 (D. Md. May 14, 2026) (Sullivan, J.) (recommending 7.75 hours of attorney and paralegal time as reasonable); *Maryland Elec. Indus. Health Fund v. RGS Elec., Inc.*, Civil Action No. ELH-12-2644, 2013 WL 1726363, at *5 (D. Md. Apr. 18, 2013) (Gauvey, J.) (recommending 12.5 hours of billing as reasonable); *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 689 (D. Md. 2013) (finding 17.8 hours of attorney billing reasonable); *Int'l Painters & Allied Trades Indus. Pension Fund v. Aussie Painting Corp.*, Civil Action No. JRR-25-1516, 2026 WL 911283, at *8 (D. Md. Apr. 2, 2026) (Aslan, J.) (recommending 21.8 hours of billing as reasonable); *Trs. of the Elec. Welfare Tr. Fund v. Tech. Serv. Grp., LLC.*, Civil Action No. GJH-14-3018, 2016 WL 5462800, at *6–*7 (D. Md. Sept. 27, 2016) (finding 29.7 hours of attorney billing reasonable but noting it was "on the high end of the range for this type of litigation"); *Shoemaker LLC*, 2026 WL 1238546, at *14–*16 (adjusting total billing to 37.5 hours). And while counsel spent approximately 18 hours to research and draft the Complaint in this case, it is nearly identical to other complaints filed in this court on behalf of the same Plaintiffs. *See, e.g.*, *Md. Elec. Indus. Health Fund v. RGS Elec., Inc.*, Civil Action No. ELH-12-2644, ECF No. 1 (D. Md. Sept. 5, 2012).

Given the factors considered above, the undersigned recommends that the number of hours billed be reduced by half. Ms. Bott's billing should be reduced to 22.5 hours and Mr. Alcantar-Robles' billing reduced to 17 hours. Therefore, multiplying the hourly rate for Ms. Bott ($350) and the updated hourly rate for Mr. Alcantar-Robles ($275) with the updated hours expended, the undersigned recommends an adjusted award of $7,875 and $4,675, respectively, for a total of $12,550. Plaintiffs also request $405 in costs for the Complaint filing fee. ECF No. 19-3 at 2. This is reasonable. *See Carroll v. Paul L. Off., PLLC*, Civil Action No. DKC-12-2041, 2013 WL 4008873, at *4 (D. Md. Aug. 2, 2013) ("Filing fees and service process fees are reasonable costs of litigation that may be recovered.").

### III.    Conclusion

For the reasons set forth above, the undersigned recommends that:

1.    The Court GRANT Plaintiffs' Motion for Default Judgment (ECF No. 19);

2.    The Court award Plaintiffs $42,115.65 in unpaid contributions, interest on the unpaid contributions, and liquidated damages; and

3.    The Court award Plaintiffs' attorneys' fees and costs in the amount of $12,955.

Sincerely,

/s/

Chelsea J. Crawford
United States Magistrate Judge

6